UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

CARDINAL HEALTH 414, INC., a Delaware Corporation,

    Plaintiff,

v.

BIODOSE, LLC, a Nevada limited liability company; and BIOTECH PHARMACY, INC., a New Mexico corporation,

    Defendants.

BIODOSE LLC, a Nevada limited liability company; and BIODOSE PHARMACY, INC., a New Mexico corporation,

    Counterclaimants,

v.

CARDINAL HEALTH 414, INC., a Delaware corporation,

    Counterdefendant.

CV-S-03-0472-PMP (PAL)

**ORDER**

Presently before the Court is Defendants' Motion for Reconsideration of the Court's Order on Spoilation and, in the Alternative, Leave to Respond to Plaintiff's Statement of Attorney's Fees (Doc. #98) filed on November 23, 2005. Plaintiff filed an Opposition to Defendants' Motion for Reconsideration; Motion to Strike Declaration of David Wilson; and Motion for Clarification (Doc. #109) on December 5, 2005. Defendants filed a Reply (Doc. #116) on December 23, 2005.

## I. BACKGROUND

This motion arises out of a claim for copyright infringement regarding radiopharmaceutical isotope tracking software. (Defs.' Opp'n to Pl.'s Mot. for Spoilation and Default J. ("Defs.' Opp'n") at 1.) Health care providers use such software to track radioactive pharmaceuticals from delivery through use and disposal. Plaintiff Cardinal Health 414, Inc. ("Cardinal") is engaged in the business of producing and marketing SYNTrac Software ("SYNTrac"), a form of radioactive isotope tracking software. (Compl. at 3.) Defendants Biodose, LLC ("Biodose") and Biotech Pharmacy, Inc. ("Biotech") produce and market Biodose Isotope Tracking Software ("Biodose Software"), a radiopharmaceutical isotope tracking software.

Biodose developed the Biodose Software over a period of two years. In affidavit, Brett Whittacre ("Whittacre"), Biodose's owner and operator, states that the Beta testing for version 1.0 began in early 2000, and Biodose released version 1.0 of Biodose Software in August 2001. (Defs.' Opp'n, Ex. 1.) Whittacre further states that after the August 2001 release of version 1.0, Biodose continued to work on and improve the Biodose Software. (Id.) Whittacre states:

> Biodose made changes such as fixing bugs, adding features in response to customer requests, and improving the useability and operation of the software. Each time that Biodose made changes to the software, we generally would provide the revised subversion only to the affected customer. Biodose only saved new subversions of Biodose when we had accumulated enough changes to warrant releasing a new subversion to the customers. There was no general re-release or new version of the software program until version 2.0.

(Id. at 2.) Whittacre further states that "Biodose did not have the need, time or resources to devote to saving thousands of subversions of its software and documenting each and every change." (Id. at 3.) The Biodose Software was developed almost entirely by two programmers, Whittacre and Jared Johnson. (Id. at 3.)

On October 1, 2002, Plaintiff notified Biodose that it had reason to believe the

Biodose Software infringed Plaintiff's intellectual property rights associated with SYNTrac. (Mot. for Spoilation & Default J., Ex. 1.) In Plaintiff's First Request for Production of Documents, Plaintiff requested that Defendants "[p]roduce any and all versions – compiled and executable – of BioDose Isotope Tracking Software and database . . ." in CD-Rom format. (Mot. for Spoilation and Default J., Ex. 11.) Plaintiff further requested Defendants "[p]roduce each and every version of the source code employed in the development and in the final version(s) of the BioDose Isotope Tracking Software and the conversion application found in the program." (Id.) On October 8, 2004, Defendants informed Plaintiff that they were prepared to produce the following:

> Source Code:
> Biodose 1.0 (will no longer compile due to age and components no longer being available, however we certify that all the source code has been provided)
> Biodose 2.00.1
>
> Executable only- don't have the source code because all built continuously into version 2.00.1. The multiple versions may not run on the computers at the same time (we are currently testing this), so we may need to provide update discs to load each version on top of the other after the previous one has been reviewed.
> Biodose 1.11-1.17
> Biodose 1.20-1.25
> Biodose 1.25.1
> Biodose 1.25.2
> Biodose 2.0
> Biodose 2.00.1
>
> In addition, Biodose will provide the conversion program, which has only one version. Biodose will also provide the databases for set-up and management of the Biodose program. The database program is called the Database Administrator.

(Pl./Counterdef. Cardinal Health 414, Inc.'s Errata to Mot. for Spoilation & Default J., Ex. 16.)

Plaintiff and Defendants offer different interpretations of what Defendants produced as Biodose Software version 1.0. Plaintiff argues that what Defendants have produced as Biodose Software version 1.0 is not actually version 1.0, but is an alternative

3

1  version of the software renamed version 1.0 for the purposes of discovery. Defendants offer
2  Dr. David Wilson's ("Wilson") affidavits rejecting Plaintiff's characterizations of
3  Defendants' programming practice and of version 1.0.  Wilson states that Plaintiff's
4  opinions regarding the veracity of version 1.0 are incorrect.  (Defs.' Opp'n, Ex. 2 at 2.)
5  First, Wilson states that none of the source codes of the proposed version 1.0 contain
6  reference to any other version, including 1.11.  (Id. at 3.)  Additionally, Wilson states that
7  the conclusion that Biodose Software existed prior to 2001 is not contrary to Defendants'
8  position because although the software development commenced in 1999, the software
9  existed in some form prior to the actual release in 2001.  (Id.)  Wilson further states that,
10 "[i]t is [his] belief, based on . . . detailed examination of the Biodose source code and on . . .
11 decades of experience in software development, that the Biodose user interface, database
12 design, and C++ source code have not been illegally altered or doctored in any way."  (Id. at
13 6.)
14         On March 14, 2005, Plaintiff filed a Motion for Spoilation and Default Judgment
15 (Doc. #38).  In that motion, Plaintiff moved the Court to find Biodose spoiled evidence and
16 to enter default judgment in Plaintiff's favor.  Plaintiff argued that default judgment should
17 be granted for two reasons: 1) Defendants purposely destroyed the Biodose Software after
18 being informed of Plaintiff's possible claim, and 2) Defendants purposely withheld Biodose
19 Software version 1.0 from Plaintiffs to thwart discovery.  Plaintiff further requested the
20 appointment of a special master pursuant to Federal Rule of Civil Procedure 53(b).
21 Defendants responded that Plaintiff's motion should be denied for two reasons.  First,
22 Defendants argued that Plaintiff's motion was procedurally improper pursuant to Federal
23 Rule of Civil Procedure 37.  Additionally, Defendants argued that there was no evidence, or
24 at worst contested evidence, of willful spoilation, and therefore a finding of spoilation and
25 the imposition of default judgment would not be justified.
26         On June 9, 2005, the Court denied Plaintiff's motion for spoilation and default

4

judgment. (Order dated June 9, 2005 (Doc. #59).) The Court held that Federal Rule of Civil Procedure 37 was inapplicable to the situation, and therefore Rule 37's remedies were not available to Plaintiff. Furthermore, the Court held that a finding of spoilation and default judgment based on the Court's inherent powers was not warranted. Specifically, the Court found that there was no evidence of willfulness or bad faith on Defendants' behalf, and that furthermore, Plaintiff failed to demonstrate how it was materially prejudiced by the alleged spoilation. Referring to Wilson's testimony confirming the veracity of version 1.0, this Court held substantial questions of material fact existed as to version 1.0, therefore a finding of spoilation was not appropriate. Finally, the Court did not appoint a special master because Plaintiff had not demonstrated why the facts of the case presented extraordinary circumstances warranting the appointment of a special master as required by Federal Rule of Civil Procedure 53.

On May 18, 2005, Defendants disclosed to Plaintiff Wilson's rebuttal expert report.[1] (Pl. Cardinal Health 414 Inc.'s Mot. for Recons. of the Order Denying Cardinal Health 414, Inc.'s Mot. for Spoilation & Default J., Ex. 1.)

///
///
///
///
///
///
///
///
///

---

[1] A full copy of the rebuttal report has not been provided to the Court by either party. A one page supplement has been provided as Plaintiff's Exhibit 1.

5

In the rebuttal report, Wilson states:

> C. Destruction of evidence. Dr. Weiss claims that development artifacts such as design documents and test plans must have existed, but have now been destroyed. As stated in the previous paragraph, the claim is incorrect. The Biodose team did have design documents, and they were given to Cardinal Health during discovery. Dr. Weiss has apparently not seen [s
>
> Dr. Weiss further claims that Cardinal Health has not been supplied with the original Biodose version 1.0 executable. This is not true. An executable was supplied, and it runs perfectly well.
>
> Dr. Weiss also claims that Cardinal Health has not been supplied with the original Biodose version 1.0 source code. This is true to the extent that the Biodose team had no reason four years ago to keep a pristine copy of the version 1.0 source code – they continually modified it to fix bugs and add features as the program evolved. The Biodose team was able, however to recreate a version of the 1.0 source code, with file dates similar to those of the executable application. This best effort set of source files was delivered to Cardinal Health as part of the discovery process. It bears no resemblance to the Syntrac source code.

(Id.) On May 25, 2005, Plaintiff deposed Wilson. (Pl. Cardinal Health 414 Inc.'s Mot. for Recons. of the Order Denying Cardinal Health 414, Inc.'s Mot. for Spoilation & Default J., Ex. 2.) At his deposition, Wilson stated that he was told that the version of 1.0 provided to Cardinal Health was a re-creation of the version 1.0 source code. (Id.) Wilson stated that he first was informed in October 2004 that the version 1.0 source code executable at issue was a re-creation, and not an original version. (Id.) Wilson further stated that he believed Defendants made a best effort at providing Plaintiff with an executable version 1.0 source code. (Id.)

On June 23, 2005, Plaintiff moved the Court to reconsider its June 9, 2005 Order. (Mot. for Reconsideration [Doc. #65].) Plaintiff argued that Wilson's expert rebuttal and deposition testimony demonstrated that Biotech knew the version 1.0 source code provided to Cardinal was not original source code, but rather a re-created version of the source code. Plaintiff further argued that Biotech did not inform Plaintiff that the 1.0 version provided was in fact a re-creation, and not an original version. Finally, Plaintiff argued that these

6

new facts demonstrated Biotech willfully misled Plaintiff as to the veracity of the version 1.0 source code, and that as a result, Plaintiff had been materially prejudiced.

On October 5, 2005, the Court granted in part and denied in part Plaintiff's motion for reconsideration. (Order dated Oct. 5, 2005 [Doc. # 77].) Thie Court granted Plaintiff's motion with regard to a finding of spoilation and sanctioned Defendants by requiring them to pay the costs and attorneys' fees associated with Plaintiff's motion. (Id. at 13.) Specifically, the Court held that "Defendants' failure to disclose that the version 1.0 source code they provided to Plaintiff was a recreated version of 1.0, rather than an archived version of 1.0, demonstrated Defendants' willful obfuscation of an issue material to this matter." (Id. at 11.) Moreover, the Court held that "by not disclosing the actual circumstances regarding the version 1.0 presented, and affirmatively representing otherwise, Defendants acted in bad faith," thus a finding of spoilation was appropriate. (Id.) Therefore the Court found spoilation and granted Plaintiff's motion for attorneys' fees. (Id.) However, this Court held that despite a finding of bad faith, default judgment was not warranted in this matter. (Id.) The Court found that there was no evidence that Defendants' actions materially prejudiced Plaintiff, and therefore default judgment was not appropriate. (Id.) The Court held that "Defendants purposefully withheld pertinent information from both Plaintiff and the Court, wasting substantial time and resources, and therefore, the Court finds that it is in its inherent power to sanction Defendants' conduct." (Id. at 12.) As a result of this ruling, Plaintiff asserts Defendants owe Plaintiff $23,650 in attorneys' fees and costs.

Defendants now move the Court to reconsider its October 5, 2005 ruling or in the alternative to give Defendants leave to respond to Plaintiff's statement of attorneys' fees. Defendants argue that the Court's findings of fact are erroneous, and thus reconsideration is required by justice. Plaintiff opposes Defendants' motion and requests the Court to clarify its October 5, 2005 Order. Specifically, Plaintiff requests that this Court draw an adverse

inference unfavorable to Defendants based on this Court's finding of spoilation.

## II.        MOTION FOR RECONSIDERATION

Reconsideration of a prior ruling is appropriate only in limited circumstances, such as the discovery of new evidence, an intervening change in controlling law, or where the initial decision was clearly erroneous or manifestly unjust. Nunes v. Ashcroft, 375 F.3d 805, 807-08 (9th Cir. 2004). A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled. Brogdon v. Nat'l Healthcare Corp., 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000).

A district court has the power to sanction for the spoilation of evidence "as an exercise of the district court's inherent powers." Id. "Courts are invested with inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Id. (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)). "A district court is vested with broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial." Campbell Indus. v. M/V Gemini, 619 F.2d 24, 27 (9th Cir. 1980).

As this Court has noted previously, "dismissal under a court's inherent powers is justified in extreme circumstances, in response to abusive litigation practices, and to insure the orderly administration of justice and the integrity of the court's orders." Halaco Eng'g Co. v. Costle, 843 F.2d 376, 380 (9th Cir. 1988) (internal citations omitted). Where a party seeks a default judgment, "the range of discretion for a district court is narrowed and the losing party's non-compliance must be due to willfulness, fault, or bad faith." Id. "It is well established in [the Ninth Circuit] that 'disobedient conduct not shown to be outside the control of the litigant' is all that is required to demonstrate willfulness, bad faith, or fault." Virtual Vision, Inc. v. Praegitzer Indus., Inc., 124 F.3d 1140, 1144 (9th Cir. 1997) (quoting Henry v. Gill Indus., 983 F.2d 943, 948 (9th Cir. 1993)). However, a "default judgment

1  may not be entered as a sanction for a party's misconduct where the misconduct is unrelated
2  to the merits of the suit." Estrada v. Speno & Cohen, 244 F.3d 1050, 1058 (9th Cir. 2001)
3  (citing Halaco Eng'g Co., 843 F.2d at 376).  Furthermore, "[d]ue process limits the
4  imposition of the severe sanctions of dismissal or default to 'extreme circumstances' in
5  which 'the deception relates to the matters in controversy' and prevents their imposition
6  'merely for punishment of an infraction that did not threaten to interfere with the rightful
7  decision of the case.'" Fjelstad v. Am. Hondo Motor Co., Inc., 762 F.2d 1334, 1338 (9th
8  Cir. 1985) (citing Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983)).
9        Upon review of the record and the pleadings, Defendants have not offered any
10 new evidence justifying reconsideration of the Court's October 5, 2005 ruling.  Nor have
11 Defendants identified an intervening change in controlling law which renders the Court's
12 prior order clearly erroneous or manifestly unjust.  See Nunes, 375 F.3d at 807-08.
13 Defendants motion for reconsideration seeks to re-litigate the same issues and arguments
14 upon which the court already has ruled.  Brogdon, 103 F. Supp. 2d at 1338. Thus, the Court
15 will deny Defendants' motion to reconsider this Court's October 5, 2005 Order.
16        Defendants have not presented any evidence or argument which would require
17 reconsideration.  Defendants assert that this Court's statement that Biotech had "repeatedly
18 assured this Court that the version 1.0 presented was an original version," is incorrect and
19 unfounded.  (Order dated Oct. 5, 2005 at 11.)  However, Defendants provide the Court with
20 no evidence or statements to the contrary.  Upon review of the record the Court reconfirms
21 its opinion that Defendants wilfully misled this Court and obfuscated the truth.  In several
22 of Defendants' pleadings Defendants assured the Court that the version 1.0 was an original
23 version. (Defs.' Opp'n to Pl.'s Mot. for Spoilation and Default J. at 8 ["As such,
24 Biotech/Biodose complied with this agreement and produced version 1.0 and 2.001 at the
25 source code review"]; 10 ["Thus, the use of 'whittrio' also shows that the source code
26 version was version 1.0, because Whittrio, Inc. did not work on any subsequent subversions

or version of the Biodose software]; 13-14 ["Mr. Coombs' contention that the version 1.0 source code produced at the source code review did not compile into an executable program is not surprising and does not constitute evidence that version 1.0 was not produced"]; 17 ["Furthermore and more importantly, Biodose produced version 1.0 of Biodose to Cardinal Health at the source code review.  As set forth in the Statement of Facts, Mr. Coombs' allegation that the source code provided was not, in fact, version 1.0 is completely baseless"].)  Defendants' arguments are, from the opinion of the Court, unequivocal in language that the version 1.0 that Defendants' produced was an original version. Defendants went so far as to assert that an argument to the contrary was "completely baseless."   It was not until Plaintiff's motion for reconsideration that Defendants explained their interpretation of "original" and "recreated."  This lack of candor is a waste of judicial resources, and it demonstrates Defendants acted in bad faith.  Furthermore, that Defendants did not properly archive an original file of version 1.0, the first version of BioDose software, the center of this matter, justifies a finding of spoilation.  Defendants do not provide any evidence to the contrary, and thus this Court will deny Defendants' motion for reconsideration.

       This Court will grant Defendants motion to respond to Plaintiff's request for attorneys' fees and costs of $23, 650.[2]

---

[2] It its Opposition, Plaintiff moves the Court to clarify its  ruling of spoilation.  Specifically, Plaintiff requests the Court rule whether the Court will draw an adverse inference against Defendants based on its finding of spoilation.  As the Court has granted summary judgment, the Court will deny Plaintiff's motion as moot. However, even if there had been a finding of an adverse inference, this would not have affected the Court's decision granting Defendants' motion for summary judgment. This Court granted Defendants' motion for summary judgment on Plaintiff's claim for copyright infringement because the Court found Plaintiff failed to demonstrate substantial similarity between the two products. Central to the matter was not the source code, but the appearance of the user interface. The Court also granted Defendants' motion with regard to Plaintiff's claim for misappropriation of trade secrets, unfair competition, and violation of the Digital Millennium Copyright Act. Central to those claims was whether Defendants accessed SYNTrac software from a back-up disk left in the possession of former SYNTrac customers. BioDose Software's source code was not considered in

## IV.    CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion For Reconsideration of the Court's Order on Spoilation and, in the Alternative, Leave to Respond to Plaintiff's Statement of Attorney's Fees (Doc. #98) is GRANTED in part and DENIED in part. Defendants' Motion For Reconsideration is GRANTED as to Defendants' Motion for Leave to Respond to Plaintiff's Request for Attorney's Fees and Costs. Defendants shall have ten (10) days from the date of this Order to respond to Plaintiff's request. Defendants' motion to reconsider this Court's October 5, 2005 Order is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Clarification (Doc. #109) is DENIED as moot.

DATED: May 22, 2006

_____
PHILIP M. PRO
Chief United States District Judge

---

disposing of that matter.